UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DWAYNE JAMES,

        Petitioner,

                                CASE NO. 1:09-CV-12738

    v.                          JUDGE THOMAS L. LUDINGTON
                                MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA L. SCUTT,

        Respondent.

——————————————/

## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) and PETITIONER'S MOTION TO GRANT PETITION (docket #6)

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.   *Exhaustion/Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     E.   *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
             a. Fingerprint Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
             b. Officer Pierce . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         3.   *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     F.   *Double Jeopardy/Unanimity (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         1.   *Double Jeopardy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
         2.   *Unanimity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
     G.   *Weight and Sufficiency of the Evidence (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . 23
         1.   *Trial Court's Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
         2.   *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
         3.   *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
             a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
             b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     H.   *Newly Discovered Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
     I.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 30
         1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
         2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
     J.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and his motion to grant the petition (docket #6). The Court should also deny petitioner a certificate of appealability.

II.    REPORT:

A.     *Procedural History*

1.     Petitioner Anthony Dwayne James is a state prisoner, currently confined at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

2.     On March 24, 2006, petitioner was convicted of being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; carrying a concealed weapon, MICH. COMP. LAWS § 750.227; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a bench trial in the Wayne County Circuit Court. On April 11, 2006, he was sentenced as an habitual offender to concurrent terms of 42 months' to 15 years' imprisonment on the concealed weapon and felon in possession convictions, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, a single claim:

> I.     TRIAL COUNSEL PERFORMED INEFFECTIVELY BY FAILING TO OBTAIN AND USE FINGERPRINT EVIDENCE AND FAILING TO CALL OFFICER JAMES PIERCE WHO WAS PRESENT WHEN THE OFFENSE ALLEGEDLY OCCURRED.

Petitioner filed a supplemental *pro per* brief reasserting the claim raised by counsel, and presenting the following additional claims:

> II.    DEFENDANT WAS DENIED DUE PROCESS AND EQUAL PROTECTION RIGHTS OF THE LAW WHEN THE TRIAL COURT RELIED UPON MULTIPLE STATUTES TO DETERMINE THE

FACTUAL FINDINGS FOR THE ONE CONTIGUOUS ACT.

II a.     DEFENDANT ALSO CONTENDS THAT THE MULTIPLE CHARGES VIOLATED HIS SIXTH AMENDMENT RIGHT TO A UNANIMOUS VERDICT.

II b.     DEFENDANT ARGUES, INTER ALIA, THAT THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE MULTIPLE CONVICTIONS ON EITHER CARRYING A CONCEALED WEAPON, POSSESSION OF A FIREARM BY A FELON; PREDICATING THE CHARGE OF FELONY FIREARM.

III.     MR. JAMES' CONVICTIONS MUST BE REVERSED AND HIS CASE REMANDED FOR A NEW TRIAL BECAUSE THE TRIAL COURT MADE ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ITS VERDICTS WERE AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

IV.     NEWLY DISCOVERED EVIDENCE EXISTS WHEREBY MR. JAMES IS ENTITLED TO A NEW TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. James*, No. 270194, 2007 WL 4462379 (Mich. Ct. App. Dec. 20, 2007) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal to the Michigan Supreme Court.

In his form application, petitioner listed three claims for relief:

I.     DEFENDANT WAS DENIED A FAIR TRIAL AND HIS STATUTORY RIGHTS UNDER THE RES GESTAE WITNESS STATUTE WHERE THE CHIEF INVESTIGATING OFFICER FAILED TO EXERCISE DUE DILIGENCE IN PRESENTING SGT. LUCAJ DURING TRIAL, AND THE PISTOL THAT WAS PART OF THE EVIDENCE.  THE TRIAL COURT ERRED IN EXCEPTING [sic] INTO EVIDENCE ANY TESTIMONY CONCERNING THE PISTOL.

II.     THE PROSECUTOR DENIED DEFENDANT A FAIR TRIAL BY SUPPRESSING EVIDENCE FAVORABLE TO DEFENDANT AND WHERE THE COURT OF APPEALS DECISION WAS AN UNREASONABLE APPLICATION OF BRADY.

III.     DEFENDANT-APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF

TRIAL COUNSEL.

Petitioner also attached to his application the briefs filed in the Michigan Court of Appeals by himself and counsel. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. James*, 480 Mich. 1190, 747 N.W.2d 308 (2008). Petitioner thereafter filed a motion for reconsideration and to add new issues, raising the two additional claims:

I.  DEFENDANT CONTENDS THAT SUFFICIENT EVIDENCE HAS NOT BEEN PRESENTED TO SUSTAIN A CONVICTION, AND THAT NO TRIER OF FACT COULD HAVE FOUND THAT THE ESSENTIAL ELEMENTS OF THE CRIME WERE PROVEN BEYOND A REASONABLE DOUBT.

II. DEFENDANT CONTENDS THAT HE WAS ENTRAPPED BY POLICE INTO COMMITTING A GREATER OFFENSE OF CCW AND THAT THE POLICE DID NOT HAVE REASONABLE SUSPICION THAT A CRIME WAS BEING COMMITTED BY DEFENDANT. THEREFORE, POLICE DID NOT HAVE PROBABLE CAUSE TO SEARCH.

The Supreme Court denied petitioner's motion for reconsideration and to add new issues in a standard order. *See People v. James*, 482 Mich. 900, 753 N.W.2d 193 (2008).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on July 10, 2009. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the Michigan Court of Appeals.[1]

6.     Respondent filed her answer on January 22, 2010. She contends that petitioner's weight of the evidence claim is unexhausted and procedurally defaulted, and that petitioner's remaining claims are without merit.

7.     Petitioner filed a reply to respondent's answer on February 9, 2010.

---

[1]In his brief, petitioner identifies these claims as five separate grounds for relief. For clarity, I refer to the claims as they are numbered in petitioner's brief.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from his arrest on December 28, 2005, in the area of Seven Mile Road and Biltmore in Detroit.  The evidence adduced at trial was accurately summarized in the prosecutor's brief in the Michigan Court of Appeals:

> Police Officer Travis Kostanko testified that he was on patrol with Officers Pierce and Zeolla when he heard several gunshots and observed a blue minivan speeding toward the area where the gunfire occurred.  Officer Kostanko testified that the van halted in the middle of the street and Defendant jumped out of the passenger side of the vehicle and ran through a church parking lot.  As he did, Officer Kostanko saw Defendant pull a large handgun from his waistband and toss it to the ground.  Officer Kostanko and Officer Pierce pursued Defendant and placed him under arrest.  Officer Kostanko recovered a .45 caliber handgun with a broken laser pointer from the place where Defendant threw it.
>
> On cross-examination, Officer Kostanko testified that he did not recall whether he was wearing gloves when he recovered the weapon and conceded that he may have placed his own fingerprints on the weapon.  Officer Kostanko also testified that it was the officer in charge of the case who determined whether the weapon should be tested for fingerprints.
>
> Officer William Zeolla testified that he was driving the patrol car and activated his emergency lights in an attempt to stop the blue minivan.  Officers Kostanko and Pierce exited the patrol car and chased Defendant.  Officer Zeolla chased the minivan for a short time, but stopped his pursuit to assist in the investigation of [the] source of the continued gunfire.
>
> At the conclusion of the prosecutor's case-in-chief, defense counsel told the trial court – and defendant concurred – that the defense would waive the testimony of Officer Pierce.
>
> Defendant testified that he was the passenger of the blue minivan and saw the police make a U-turn.  Defendant told the driver of the van that he had warrants for his arrest and wanted to get out of the van.  The driver turned the corner and Defendant exited.  Defendant claimed that he heard gunshots and started running.  He said that it was Officer Zeolla who chased him into the alley next to the church parking lot and that he stopped running when he realized that it was the police chasing him.  According to Defendant, as Officer Zeolla was walking him back to the patrol car, the officer searched the ground by the church and found a gun.  Defendant denied that he threw a gun or even possessed a gun that night.

Pl.-Appellee's Br. on Appeal, in *People v. James*, No. 270194 (Mich. Ct. App.), at 3-4 (footnotes omitted).  Petitioner also testified that the officers assaulted him.  In addition, the parties stipulated

that petitioner had a prior felony conviction and that his right to possess a firearm had not bee

restored.

C.    *Exhaustion/Procedural Default*

Respondent first contends that petitioner's third claim, asserting that the verdict was against

the great weight of the evidence, was not properly exhausted and is barred by petitioner's procedural

default.  The Court should decline to resolve petitioner's application on this basis.

The federal habeas statute provides, in relevant part, that "[a]n application for a writ of

habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not

be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts

of the State[.]" 28 U.S.C. § 2254(b)(1)(A).  Thus, "[f]ederal habeas relief is available to state

prisoners only after they have exhausted their claims in state court."  *O'Sullivan v. Boerckel*, 526

U.S. 838, 839 (1999).  A petitioner has not exhausted his remedies "if he has the right under the law

of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  To

satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each

of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th

Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  A petitioner "fairly

presents" his claim to the state courts by either (1) relying upon federal cases employing federal

constitutional analysis; (2) relying upon state cases employing such an analysis; (3) phrasing the

claim in terms of federal constitutional law; or (4) alleging facts within the mainstream of federal

constitutional law.  *See Clinkscale*, 375 F.3d at 437 (quoting *Newton v. Million*, 349 F.3d 873, 878

(6th Cir. 2003)).  Further, the petitioner must fairly present the claim at each level of state court

review.  *See O'Sullivan*, 526 U.S. at 845-47.  Exhaustion is not required only if "(I) there is an

absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). A "mixed petition," that is a petition which contains both exhausted and unexhausted claims, must be treated as unexhausted in its entirety. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). A federal habeas court has no authority to grant relief on even an exhausted claim where the petition also contains unexhausted claims. *See Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

Respondent contends that petitioner did not present his third claim in the Michigan Supreme Court. However, it is not clear that respondent is correct in this assertion. It is true that the claim was not listed on petitioner's form application for leave to appeal in the Michigan Supreme Court, but attached to that form application were petitioner's briefs in the Michigan Court of Appeals, which did include that claim. I have found no Michigan case or court rule addressing whether the Michigan Supreme Court would consider these briefs as incorporated into the application for leave to appeal, thus presenting the claims raised in the briefs. Thus, it is not clear whether petitioner properly presented his weight of the evidence claim to the Michigan Supreme Court.

Further, it is not clear whether petitioner's claim, if not properly presented to the Michigan Supreme Court, is merely unexhausted (for which the proper course of action would be a dismissal without prejudice) or is also procedurally defaulted (which would preclude habeas review absent an exception). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman*, 501 U.S. at 735 n.*. In this case, it is not clear whether petitioner has a further avenue of state court review available to pursue this claim. As a general matter, petitioner

could still present this claim in a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.508. However, such a motion would not be available if petitioner had previously filed a motion for relief from judgment, because the Michigan Court Rules prohibit successive motions. *See* MICH. CT. R. 6.502(G). In her description of the procedural history of the case, respondent asserts that "[p]etitioner filed a motion for relief from judgment on May 26, 2009." Answer, at 5. The state court materials submitted by respondent, however, do not contain the motion or the records of any proceedings relating to the motion. And for his part, petitioner characterizes this motion as a motion to correct a sentencing error under MICH. CT. R. 6.429. *See* Pet., ¶ 15.

Thus, it is far from clear whether petitioner's claim is unexhausted and if so, whether the case should be dismissed without prejudice for further exhaustion or alternatively whether the unexhausted claim is now defaulted. In light of these difficult questions, the Court should decline to resolve respondent's exhaustion and procedural default arguments and should address the claims on the merits. Exhaustion is not jurisdictional, and thus despite the exhaustion requirement a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis added). A federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review. *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987). In these circumstances, the court should dismiss the non-federal or frivolous claim on its merits to save the state courts the useless review of meritless constitutional claims, *see Cain*, 947 F.2d at 820. Similarly, while the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily

be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).

As explained below, petitioner's claims are readily resolved on the merits. For this reason, the Court should proceed directly to the merits rather than resolve the petition on the basis of respondent's exhaustion and procedural default arguments.

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Ineffective Assistance of Counsel (Claim I)*

Petitioner first contends that his trial counsel rendered constitutionally ineffective assistance. Specifically, he contends that trial counsel was ineffective for (1) failing to obtain and use fingerprint evidence; and (2) failing to call Officer James Pierce at trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.      *Analysis*

*a. Fingerprint Evidence*

Petitioner first contends that counsel was ineffective for failing to obtain and use at trial fingerprint evidence. The Michigan Court of Appeals rejected this claim, concluding that counsel's failure to inquire about fingerprint evidence was part of a reasonable trial strategy. The court explained that Officer Kostanko testified that it was Sergeant Lucaj, as the officer in charge of the

case, who would have decided whether to test the gun for fingerprints. Lucaj was not available at trial, and the prosecutor requested an brief adjournment to produce him. At this point, counsel agreed to waive Lucaj's testimony, and immediately afterward "moved for a directed verdict based on the prosecutor's failure to offer the gun into evidence, which would have been accomplished through Sergeant Lucaj who, according to defense counsel, 'needed to be here to testify for the gun purposes or to introduce evidence that the gun was recovered.'" *James*, 2007 WL 4462379, at *1, slip op. at 2. Although this strategy was ultimately not successful, it was reasonable. Because no gun had been introduced at trial, and because Lucaj was the person through whom a gun would have been admitted, counsel could have reasonably concluded that petitioner stood a fair chance of success on a motion for directed verdict if counsel waived the presence of Lucaj.

Further, petitioner cannot show that he was prejudiced by counsel's failure to seek fingerprint evidence. There is no indication that fingerprint tests were conducted, nor is there any indication that petitioner's prints would not, in fact, have been discovered. Further, even assuming that tests were run and fingerprints were not found, there is not a reasonable probability that the result of the proceeding would have been different. Officer Kostanko testified unequivocally that he saw petitioner in possession of a gun, and saw petitioner throw the gun to the ground. And petitioner did not dispute that Officer Kostanko in fact recovered a gun from the church parking lot through which petitioner had fled. That Kostanko actually recovered a gun along petitioner's avenue of escape corroborates Kostanko's testimony. Nor would have the absence of petitioner's fingerprints have provided much in the way of exculpatory evidence. There are myriad reasons why no usable prints may be found on an item of evidence, *see United States v. Burdeau*, 168 F.3d 352, 356-57 (9th Cir. 1999), and it is not uncommon for no usable prints to be found on a gun in

particular. "In fact it is extremely common: 'successful development of latent prints on firearms is difficult to achieve. In reality, very few identifiable latent prints are found on firearms, a fact that has been discussed in both literature and the judicial system.'" *United States v. Paladino*, 401 F.3d 471, 478 (7th Cir. 2005) (quoting Clive A. Barnum & Darrell R. Klasey, "Factors Affecting the Recovery of Latent Prints on Firearms," *Prosecutor*, Jan./Feb.1998, p. 32). Thus, even had petitioner's fingerprints not been found on the gun, there is not a reasonably probability that the result of the proceeding would have been different. *Cf. United States v. Hibbler*, 193 Fed. Appx. 445, 450 (6th Cir. 2006) (evidence sufficient to sustain conviction for possession offense where officer testified to seeing defendant possess gun, even though defendant's fingerprints were not found on the gun); *Dilks v. Adams*, CV 07-3397, 2008 WL 2156734, at *1 (C.D. Cal. May 20, 2008) ("[T]he fact that no identifiable fingerprints were found on the gun cannot plausibly be said to establish whether or not petitioner threw the gun from the car."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Officer Pierce

Petitioner also contends that counsel was ineffective for failing to call Officer Pierce to testify at trial. "Complaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

Petitioner has failed to meet his burden of demonstrating that counsel was ineffective for failing to call Officer Pierce, or that he was prejudiced by this failure. In his petition, as in his state appellate brief, petitioner contends only that he "believes that had Officer Pierce testified he would have testified differently than the two officers who testified and would have ca[u]se[d] a reasonable doubt on his guilt." Pet., at 6. Neither in the state court nor in this Court, however, has petitioner explained why he believes this, or in what particular respects he believes Officer Pierce's testimony would have differed from that of the other officers. As the court of appeals explained, because petitioner did not present any evidence or specific allegation upon which he bases his belief, "[t]here is no basis in the record for concluding that Officer Pierce could have provided testimony favorable

to defendant." *James*, 2007 WL 4462379, at *1, slip op. at 2. Further, as observed by the court of appeals, counsel's decision was made after counsel consulted with petitioner about the matter, *see id*. at *1, slip op. at 1; Waiver Trial Tr., at 42. And at the oral argument on petitioner's motion for new trial, appellate counsel explicitly informed the court that after speaking with Officer Pierce it was clear that his testimony would not have been helpful to petitioner. *See James*, 2007 WL 4462379, at *1, slip op. at 2; Post-Conviction Hr'g Tr., dated 1/26/07, at 3. Thus, petitioner cannot show that counsel was ineffective for failing to call Officer Pierce at trial, nor that there is a reasonable probability that the result of his trial would have been different had Pierce testified. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3. *Evidentiary Hearing*

In his application, petitioner also contends that he is entitled to an evidentiary hearing to develop evidence to support his ineffective assistance of counsel claims. The Court should conclude that an evidentiary hearing is not appropriate.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Even assuming that an evidentiary hearing were permitted under § 2254(e)(2), such a hearing is not necessary here. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781

F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted). Thus, "'an evidentiary hearing is not required on issues that can be resolved by reference to the state court record.'" *Id.* (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)).

With respect to the fingerprint related ineffective assistance claim, petitioner cannot show that an evidentiary hearing would have the potential to advance his claim. Even assuming that a fingerprint examination on the gun could now be done, and that such a test would find no usable fingerprints matching petitioner's prints, there is not a reasonable probability that the result of petitioner's trial would have been different. As explained above, it is not uncommon for a fingerprint not to be recoverable from a gun, the absence of petitioner's prints on the gun would not have called into question the testimony of the officers that petitioner possessed the handgun recovered from the scene. Indeed, in denying petitioner's motion for new trial and request for an evidentiary hearing, the trial judge, who was also the finder of fact, explicitly noted that the lack of petitioner's fingerprints on the gun would not have made a difference. *See* Post-Conviction Hr'g Tr., dated 1/26/07, at 6-7. Thus, an evidentiary hearing would not have the potential to advance petitioner's claim relating to the fingerprint evidence.

Likewise, an evidentiary hearing would not have the potential to advance petitioner's claim with respect to the failure to call Officer Pierce. As explained above, appellate counsel indicated that Pierce would have provided no favorable testimony, and petitioner has offered no basis to support his vague speculation that Officer Pierce's testimony would have differed from the testimony of the other officers. Speculative allegations or allegations which are contradicted by the record are insufficient to entitle a petitioner to an evidentiary hearing, *see Getsy v. Mitchell*, 495 F.3d 295, 312 (6th Cir. 2007); *Young v. Herring*, 938 F.2d 543, 560 & n.12 (5th Cir. 1991). Specifically, "'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). Accordingly, the Court should conclude that an evidentiary hearing is not necessary.

F.    *Double Jeopardy/Unanimity (Claim II)*

The remainder of petitioner's claims challenge the validity of his convictions, and in particular of his felony-firearm conviction, on a number of bases. In his second claim, petitioner challenges the use of a single course of conduct–*i.e.*, his possession of a single gun–as a basis for three separate convictions. He contends that this resulted in multiple punishments in violation of the Double Jeopardy Clause, and that the charging of both CCW and felon-in-possession as predicate offenses for the felony-firearm charge deprived him of his right to a unanimous verdict. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Double Jeopardy*

a. *Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject

for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).

As noted above, the Double Jeopardy Clause prohibits a state from punishing a defendant twice for the same "offense." However, "[f]or constitutional purposes, it makes no difference that the separate charges against [petitioner] grew out of the same transaction." *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). Thus, the question is whether the Michigan Legislature intended that the assault of two separate victims even though accompanied by only a single intent to harm one of the victims gives rise to separate criminal liability; if so, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id*. at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

*b. Analysis*

Petitioner was convicted of three separate felonies based on his single possession of one gun. With respect to the felony-firearm charge, the predicate felony found by the court was the felon-in-possession charge. *See* Waiver Trial Tr., at 75 (finding that "[a]t the time he was carrying a pistol, the Defendant had committed the crim of felon in possession of a firearm."). Thus, the question here is whether the Michigan legislature intended that a person who commits a violation of the CCW, felon in possession, and felony-firearm statutes through a single possession of a single firearm, face punishment for each separate statutory violation.

With respect to multiple punishments for felon-in-possession and felony firearm, the federal and state courts have repeatedly held that the Michigan legislature intended multiple punishments to be imposed for a single possession which violates both statutes. *See White v. Howes*, 586 F.3d 1025, 1029-33 (6th Cir. 2009); *Mattox v. Davis*, 549 F. Supp. 2d 877, 915-17 (W.D. Mich. 2008); *People v. Calloway*, 469 Mich. 448, 452, 671 N.W.2d 733, 735 (2003). Likewise, the Michigan courts have held that the legislature intended to authorize multiple punishments for a single possession which violates both the CCW and felon-in-possession statutes. *See People v. Mayfield*, 221 Mich. App. 656, 661-62, 562 N.W.2d 272, 275 (1997). Finally, although CCW may not be used as a predicate felony to support a felony-firearm charge, *see* MICH. COMP. LAWS § 750.227b(1), the Michigan courts have concluded that the Michigan legislature intended a single possession which violates both the CCW and felony-firearm statutes to be punished separately "when the felony-firearm conviction is based on a felony distinct from carrying a concealed weapon." *People v. Dillard*, 246 Mich. App. 163, 171 n.5, 631 N.W.2d 755, 760 n.5 (2001); *see also*, *People v. Sturgis*, 427 Mich. 392, 405-10, 397 N.W.2d 783, 788-90 (1986). Because this Court is bound by the Michigan courts' interpretation of state law in deciding the double jeopardy issue, *see Rodgers*, 49

20

Fed. Appx. at 597; *Banner*, 886 F.2d at 780, the "court's inquiry is at an end" and there is no double jeopardy violation. *Johnson*, 467 U.S. at 499 n.8. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Unanimity*

Petitioner also contends that he multiple charges violated his Sixth Amendment right to a unanimous verdict. The exact basis of this claim is unclear from petitioner's brief. Presumably, petitioner is contending both CCW and felon in possession were asserted as predicate felonies to support the felony-firearm conviction, and that therefore a jury could have disagreed about which predicate felony petitioner had committed but found him guilty based on a unanimous determination that he possessed a firearm during the commission of some predicate felony. This claim fails, for several reasons.

First, there is no constitutional right to a unanimous verdict in a state criminal trial. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district in wherein the crime shall have been committed[.]" U.S. CONST. amend. VI. Although this provision has been interpreted as requiring jury unanimity in federal prosecutions, this requirement has not been applied to the states through the Due Process Clause of the Fourteenth Amendment. Thus, as a general matter, there is no constitutional requirement that a state criminal jury reach a unanimous verdict, *see Schad v. Arizona*, 501 U.S. 624, 630 (1991) (plurality opinion); *Brown v. Louisiana*, 447 U.S. 323, 330-31 (1980); *Apodaca v. Oregon*, 406 U.S. 404, 410-11 (1972) (plurality opinion),[2] and a

_____

[2]In certain situations a state criminal defendant may have a constitutional due process right to a unanimous verdict, such as where he is tried before a six-person jury. *See Brown*, 447 U.S. at 331. However, these circumstances are not present here.

jury unanimity claim, standing alone, will therefore afford no basis for habeas relief, *see Carlyle v. Rowland*, No. 91-55385, 1992 WL 122254, at *1 (9th Cir. June 3, 1992).

Second, in *Richardson v. United States*, 526 U.S. 813 (1999), "the Supreme Court distinguished between the elements of a crime, which it held had to be determined unanimously, and the means by which an element may be accomplished, which does not require unanimity." *United States v. Davis*, 306 F.3d 398, 413 (6th Cir. 2002) (discussing *Richardson*, 526 U.S. at 817); *see also*, *Schad v. Arizona*, 501 U.S. 624, 632-45 (1991) (plurality opinion). Here, the felony-firearm charge could be satisfied by possession during the commission of nearly any other felony. *Cf. Coe v. Bell*, 161 F.3d 320, 348 (6th Cir. 1998) (citing *Schad* for the proposition that "it is acceptable for a first-degree murder conviction to be based on two alternative theories even if there is no basis to conclude which one (if only one) the jury used."); *United States v. DeJohn*, 368 F.3d 533, 542 (6th Cir. 2004) (under federal firearm possession statute, jury need not be instructed that it must unanimously find possession of a particular firearm).

Third, petitioner's unanimity claim is inapposite because petitioner was not tried before a jury; rather, he was tried before a judge sitting as the finder of fact. A unanimity claim makes no sense in a bench trial, where there is only one decision maker. Finally, petitioner's unanimity claim fails as a factual matter. Petitioner was not charged with felony-firearm with either felon in possession or CCW as a predicate felony, because CCW is not a permissible predicate felony. *See* MICH. COMP. LAWS § 750.227b(1). Rather, only felon in possession was charged as the predicate felony, and the trial judge explicitly found felon in possession to be the predicate felony supporting petitioner's felony-firearm conviction. *See* Waiver Trial Tr., at 75. Accordingly, petitioner's unanimity claim is without merit.

G.    *Weight and Sufficiency of the Evidence (Claims III & IV)*

In his third and fourth claims petitioner contends that the trial court's findings were inadequate, the verdict was against the great weight of the evidence, and the evidence was insufficient to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Trial Court's Findings*

To the extent petitioner contends that the trial court's findings of fact were not sufficiently detailed under the requirements of MICH. CT. R. 6.403, he is not entitled to relief because the claim raises an issue of state law not cognizable on habeas review. As the Supreme Court has explained, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Petitioner has cited, and I have located, no cases suggesting that specific findings of fact are required in a bench trial as a matter of federal constitutional law. On the contrary, the Sixth Circuit has explained that "[a] state cannot be said to have federal due process obligations to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). Thus, "[t]he denial of state-created procedural rights is not cognizable on habeas corpus review unless there is a deprivation of a substantive right protected by the Constitution." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995). The state court's failure to make detailed findings of fact did not deprive petitioner of a "substantive right protected by the Constitution." Thus, petitioner's conviction does not offend due process even if the trial court failed to issue findings of fact sufficient to satisfy the Michigan Court Rules. *See Witt v. Prelesnik*, No. 92-2354, 1993 WL 473696, at *1 (6th Cir. Nov. 15, 1993);

*Tate v. Booker*, No. 06-CV-13156, 2008 WL 2245425, at *5 (E.D. Mich. May 30, 2008) (Cleland, J.).

2.    *Weight of the Evidence*

Petitioner also contends that the trial court's verdict was against the great weight of the evidence.  This claim also raises only a non-cognizable issue of state law.  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review.   *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

3.    *Sufficiency of the Evidence*

a.  *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA

standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also, Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

### b. Analysis

Petitioner does not contest the sufficiency of the evidence with respect to any particular

element of the three offenses charged against him, except for the common element that he possessed a firearm. He contends that the prosecution presented insufficient evidence to show that he possessed a gun at all. The Court should disagree.

Officer Kostanko testified unequivocally that he observed petitioner remove a handgun from his waistband and throw it to the ground, and that he recovered a firearm from the location where he observed petitioner throwing the gun. This testimony, if accepted by the trial judge, was sufficient to establish beyond a reasonable doubt that petitioner possessed a firearm. Petitioner's argument that Officer Kostanko's testimony was not credible, or was contradicted in some details by the testimony of Officer Zeolla, does not alter this conclusion. It is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). Here, the victim's testimony, if believed, established the necessary elements of the offenses charged against petitioner. Whether to believe the victim was for the trial judge, not for the Michigan Court of Appeals or for this Court on habeas review. Nor, as explained above in

connection with petitioner's ineffective assistance claim, was the evidence insufficient because the prosecution did not introduce the gun into evidence. *See Hibbler*, 193 Fed. Appx. at 450; *People v. Hayden*, 132 Mich. App. 273, 296, 348 N.W.2d 672, 684 (1984) ("Where conviction of an offense requires proof beyond a reasonable doubt that a defendant possessed a firearm, this element may be proven without the actual admission into evidence of the weapon."). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Newly Discovered Evidence*

Finally, petitioner contends that he is entitled to habeas relief because he has newly discovered evidence of his innocence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the

constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.

Further, petitioner's evidence falls far short of that necessary to establish that he is innocent. In *Herrera*, without elaborating further, the Court noted that even if a free-standing claim of innocence were cognizable on habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. In *Schlup*, the Court elaborated on the showing required to establish "actual innocence" for purposes of overcoming a procedural bar to consideration of a constitutional claim. The Court explained that, to establish actual innocence, the petitioner must "show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schulup*, 513 U.S. at 327 (internal citation and quotation omitted).

The Supreme Court has also explained that a petitioner cannot establish his actual innocence merely be rehashing his innocence claims raised in the state courts and relying on the evidence adduced at trial. If he could, federal habeas review would become nothing more than a second trial on the merits, something the Supreme Court has repeatedly admonished the federal courts to avoid. *See Milton v. Wainwright*, 407 U.S. 371, 377 (1972) ("The writ of habeas corpus has limited scope; the federal courts do not sit to re-try state cases *de novo*[.]"). Thus, "to be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence that was not presented at trial." *Schlup*, 513 U.S. at 324. "Examples

of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

Here, petitioner contends that Dennis Carter, the driver of the van, could "testify to the actual events the night [he] was arrested" and that his testimony would support petitioner's claim that the officers fabricated their testimony. Pet., at 13. Petitioner provides no evidentiary support, such as an affidavit from Carter, to support this assertion. Nor does he provide any information respecting the actual testimony that Carter could provide. Testimony from Carter that he did not see petitioner with a gun would not establish petitioner's innocence, because the evidence at trial showed that the gun was secured in petitioner's waistband until he removed it and threw it away. And petitioner does not assert, nor does the trial evidence support, that Carter fled the vehicle with petitioner and thus could contradict Officer Kostanko's testimony that petitioner removed and disposed of the gun during the flight from the van. To the extent that Carter could impeach the testimony of Officers Kostanko and Zeolla on some particulars of the encounter, the evidence would not directly go to his factual guilt or innocence, but only to impeaching the testimony of the officers. Such newly discovered impeachment evidence does not provide sufficient evidence of actual innocence to overcome a procedural bar, much less does it provide sufficient evidence to support a free-standing innocence claim. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992)

(newly discovered impeachment evidence "will seldom, if ever," establish actual innocence). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.     *Recommendation Regarding Certificate of Appealability*

     1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

 2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, a failure to find petitioner's fingerprints on the gun would not have affected the trial judge's conclusion that petitioner in fact possessed the gun, and there is no indication that Officer Pierce could have provided any testimony that would have been favorable to petitioner. Thus, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable. The resolution of petitioner's double jeopardy claim is not reasonably debatable, because the Michigan courts have repeatedly held that the legislature intended multiple punishments to arise

under the CCW, felon in possession, and felony-firearm statutes for a single possession of a firearm. Likewise, the resolution of petitioner's jury unanimity claim is not reasonably debatable because petitioner was not tried before a jury, and because there is no federal constitutional right to a unanimous verdict in any event. The resolution of petitioner's weight of the evidence and trial court factual findings claims is not reasonably debatable, because those claims raise only issues of state law. The resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable because Officer Kostanko's testimony, if believed, established beyond a reasonable doubt that petitioner possessed a firearm. Finally, the resolution of petitioner's newly discovered evidence claim is not reasonably debatable, both because such a claim does not provide a basis for habeas relief and because the evidence does not establish his actual innocence. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/28/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 28, 2010.

s/Eddrey Butts
Case Manager